UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LINDSEY LAIRD and ANDRE ROBERTS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:18-cv-01567-AGF |
| CITY OF SAINT LOUIS, MISSOURI, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiffs Lindsey Laird and Andre Roberts claim that during peaceful protest activity following the September 15, 2017, verdict in *State of Missouri v. Stockley*, St. Louis Metropolitan Police Department (SLMPD) officers unlawfully "kettled,"[1] pepper sprayed, assaulted, and arrested them. Plaintiffs bring this civil rights action under 42 U.S.C. § 1983 against several SLMPD officers[2] alleged to be involved in the relevant events, as well as the City of St. Louis. This is one of several cases arising out of SLMPD officers' conduct with respect to the *Stockley* protests.

---

[1] According to the complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress.

[2] Plaintiffs name each of the officers in their individual and official capacities, without specifying in which capacity the various claims are asserted. However, any claim against officers in their official capacity is treated as a claim against the City. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998).

As have the defendants in the other cases, the City and six of the supervising individual officers ("Supervisors") named as Defendants here move to dismiss or, alternatively, to strike Plaintiffs' second amended complaint. For the reasons that follow, the Court will dismiss Plaintiffs' failure-to-train claim and their request for punitive damages on the state-law claims against the City and the Supervisors in their official capacities only; the Court will otherwise deny the motion.

## BACKGROUND

Taken as true for the purpose of this motion, the facts alleged in the second amended complaint are as follows. On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *Stockley*, prompting some members of the public to engage in protests around the City. The protests concerned not only the verdict but broader issues, including racism in the criminal justice system and the use of force by police against African-American citizens. Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals." ECF No. 32 ¶ 29.

On September 17, 2017, Plaintiffs went to downtown St. Louis to check on friends who had been protesting peacefully throughout that weekend. Shortly after the couple's arrival, police began to block streets and began herding people toward the intersection of Washington Avenue and Tucker Boulevard. Plaintiffs were never told by police to disperse. But officers wielding bicycles blocked the route that Plaintiffs hoped to use to exit. Plaintiffs approached the officers to explain that they had only been present for a short time, had committed no crimes, and would leave voluntarily. The officers yelled,

"Get the [expletive] back!," and Plaintiffs complied, raised their hands, and sat on the ground. Almost immediately, police sprayed Roberts with pepper spray in his face and torso. Plaintiffs were zip-cuffed and laid on the ground.[3]

After being sprayed, Roberts was shaking, breathing erratically, and drooling. Laird attempted to assist Roberts, and officers violently moved her away, leaving a large bruise on her arm. Officers dragged Roberts to a wall and sat him against it. The zip cuffs holding Roberts's hands broke, so an officer held Roberts by the throat while re-cuffing him.[4] Roberts sat against the wall for 30-60 minutes before police transported both Plaintiffs to a jail cell. Plaintiffs remained detained for approximately 20 hours in crowded cells and were never provided with water or medical attention.

Plaintiffs claim that they were not engaged in unlawful activity at any time during their encounter with police. Plaintiffs further allege that during and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" *Id.* ¶ 97. Officers also taunted the zip-cuffed individuals, saying, that if they wanted to be comfortable or wanted water, they "shouldn't have committed a crime." *Id.* ¶ 145.

---

[3] Plaintiffs do not identify by name the officer(s) who used pepper spray against Roberts. Plaintiffs do identify the officers who arrested Plaintiffs. These are Officer Jeremiah Koerper, who arrested Laird, and Officer Gregory Schaeffer, who arrested Roberts. As of the date of this Memorandum and Order, neither Koerper nor Schaeffer has entered his appearance in this case.

[4] Plaintiffs do not identify by name the officers who moved Laird or Roberts, or who held Roberts by the throat.

3

As noted above, Plaintiffs' 13-count second amended complaint names the City and several SLMPD officers alleged to be involved in the relevant events. The Supervisors who have moved for dismissal are: Lieutenant Colonel Gerald Leyshock, the incident commander during the events of September 17, 2017, who allegedly approved the plan to restrict the movement of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present; Lieutenant Timothy Sachs, who allegedly developed the plan described above, deployed the tactical units accordingly, and ordered the use of chemical agents; Lieutenant Scott Boyher, who allegedly directed the officers under his command in using their bicycles to block Plaintiffs' path, and directed the officers to use force and to arrest the protestors in Plaintiffs' group; Sergeant Matthew Karnowski, who allegedly declared the protests an "unlawful assembly," which SLMPD used as a predicate to the arrests and use of the chemical agents, and also directed the officers under his command to use force and to arrest the protestors in Plaintiffs' group; Sergeant Randy Jemerson, who allegedly directed people to the intersection of Washington and Tucker pursuant to the plan described above; and Sergeant Brian Rossomanno, who also allegedly directed people to the intersection, and was "within arms-length" of the officers who pepper sprayed and used force against the protestors in Plaintiffs' group. Plaintiffs also name the arresting officers, Koerper and Schaeffer, as well as John Does #1-5, who were further involved in arresting, pepper spraying, and assaulting Plaintiffs but who removed their name tags and wore masks concealing their faces, thereby preventing Plaintiffs from identifying them.

Plaintiffs assert unlawful arrest (Count I), First Amendment (Count II), and excessive force (Count XII) claims against the individual officers pursuant to § 1983. They also assert § 1983 claims against the City (Count IV) alleging municipal liability for the officers' unlawful actions and against all Defendants (Count III) alleging that Defendants "acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiffs' civil rights." *Id.* ¶ 175. Finally, Plaintiffs assert supplemental state-law claims against all Defendants alleging assault (Count V), false arrest (Count VI), false imprisonment (Count VII), abuse of process (Count VIII), malicious prosecution (Count IX), intentional infliction and negligent infliction of emotional distress (Counts X and XI), and battery (Count XIII).

The City and Supervisors move to dismiss the second amended complaint for failure to comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a). Alternatively, the City and the Supervisors move to strike certain paragraphs of the amended complaint under Fed. R. Civ. P. 12(f) as immaterial or impertinent.

The Supervisors also move to dismiss Plaintiffs' § 1983 claims under Rule 12(b)(6), arguing that Plaintiffs fail to allege that the Supervisors personally participated in the use of force. As to the state-law claims, the Supervisors argue that they should be dismissed under Missouri's official immunity doctrine. The Supervisors and the City also argue that the infliction of emotional distress claims are not actionable because the same facts give rise to another cognizable tort, namely, assault, and that the claims alleging battery and assault are duplicative.

5

The City moves to dismiss Plaintiffs' § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine, citing *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016). The City contends that, as the Eighth Circuit held in *Kelly*, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. The City further argues the civil conspiracy claim fails because the underlying claims on which it is based fail.

Next, the City moves to dismiss Plaintiffs' § 1983 claim, arguing that it fails to adequately allege municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Finally, the City argues that Plaintiffs' state-law claims against it are barred by sovereign immunity and that, in any event, Mo. Rev. Stat. §537.610.3 precludes the recovery of punitive damages against it on the state-law claims.

## **DISCUSSION**

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**Motion to Dismiss Under Rule 8(a) and Alternative Motion to Strike**

The City and the Supervisors move to dismiss the amended complaint for failure to comply with the "short and plain" statement requirement of Rule 8(a), arguing that the

6

complaint is "replete with tendentious, inflammatory, and immaterial allegations attacking the integrity of Missouri courts, injecting issues to which defendants cannot possibly frame a response . . . ." ECF No. 35 at 2. Specifically, the City and Supervisors object to Plaintiffs' allegations concerning the *Stockley* verdict, the nature of public protests in response thereto, and prior orders of this Court concerning SLMPD actions in response to public protests. Alternatively, the City and the Supervisors move to strike these paragraphs under Fed. R. Civ. P. 12(f) as immaterial or impertinent.

As other judges in this District have held with respect to the same challenge in related cases, the complaint's factual allegations and the supporting exhibits to which the City and Supervisors object are relevant to Plaintiffs' municipal liability claim at a minimum. *Laney v. City of St. Louis, Mo.*, No. 4:18 CV 1575 CDP, 2019 WL 2423308, at *3 (E.D. Mo. June 10, 2019); *Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *4 (E.D. Mo. Apr. 17, 2019). Neither dismissal under Rule 8(a) nor striking under Rule 12(f) is warranted.

**Motion to Dismiss Under Rule 12(b)(6)**

I.  Individual Liability of Supervisors Under § 1983

While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be individually liable under § 1983 "(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation

7

occurred." *B.J.G. ex rel. McCray v. St. Charles Cty. Sheriff*, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010) (citations omitted), *aff'd sub nom. B.J.G. ex rel McCray v. St. Charles Cty. Sheriff*, 400 F. App'x 127 (8th Cir. 2010). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 761 (8th Cir. 2003)

As an initial matter, the single paragraph addressed to the Supervisors' individual liability under § 1983 does not refer to Plaintiffs' unlawful arrest claim in Count I, First Amendment claim in Count II, or civil conspiracy claim in Count III. Rather, this part of the motion to dismiss refers only to Plaintiffs' excessive force claim in Count XII. The Court therefore concludes that the Supervisors' motion to dismiss Plaintiffs' § 1983 claims is directed only to Count XII, and the Court will limit its discussion accordingly.

In Count XII, Plaintiffs allege that the officers' use of zip-cuffs, kettling, and pepper spray each constituted excessive force. Without deciding whether each of these actions could in fact constitute excessive force,[5] at this stage, Plaintiffs adequately allege the Supervisors' direct involvement in them. Plaintiffs allege specific facts describing each of the Supervisor's roles in planning, approving, and executing the alleged uses of force.[6] The Court will thus deny the Supervisors' motion to dismiss the § 1983 claims.

---

[5] In their current motion, the City and Supervisors have not challenged Plaintiffs' contention that each of these actions constituted excessive force.

[6] The Supervisors' motion assumes that Plaintiffs' excessive force claim against them is based on a theory of failure to intervene. And Plaintiffs' factual allegations could potentially support such a claim. However, in response to the motion to dismiss,

8

II. Civil Conspiracy Claim

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). The first element "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White*, 519 F.3d at 814.

The City's primary challenge to Plaintiffs' § 1983 conspiracy claim is that it is barred by the intracorporate conspiracy doctrine. The cases relied upon by the City involved conspiracy claims under 42 U.S.C. § 1985. *See Kelly*, 813 F.3d at 1078. However, the Eighth Circuit has not addressed whether the doctrine applies to § 1983 conspiracy claims, and in the absence of such direction form the Eighth Circuit, the judges in this District—including in another *Stockley* protest case—have consistently declined to extend the doctrine's reach, at least at the pleading stage. *See Aldridge*, 2019 WL 1695982, at *8 (collecting cases). Here, too, the Court finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage.

---

Plaintiffs disclaim any reliance on a failure-to-intervene theory. *See* ECF No. 36 at 8 ("Plaintiffs have not raised a failure to intervene claim.").

9

The Court further rejects the City's argument that the conspiracy claim fails because the underlying claims fail. As noted above, the motion to dismiss does not even address Plaintiffs' unlawful arrest and First Amendment claims. Because a constitutional violation might be proved on those claims, the City's argument lacks merit. As such, the City's motion to dismiss Plaintiffs' § 1983 conspiracy claim will be denied.

III. *Monell* Claims Against the City

Plaintiffs allege that the following policies, practices, or customs caused the alleged constitutional violations in this case, thereby making the City liable under *Monell:*

> a. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;
>
> b. SLMPD custom or policy of using kettling without warning on citizens who are not resisting arrest and who are exercising First Amendment rights, whether those rights be protesting or reporting;
>
> c. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;
>
> d. SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens or unlawful conduct;
>
> e. Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

ECF No. 32 at ¶ 187. Plaintiffs also claim that the City inadequately trained, supervised, and disciplined SLMPD officers with respect to the use of kettling and the use of force. *Id.* at ¶ 188.

For § 1983 liability to attach to the City, Plaintiffs must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In the motion to dismiss, the City argues that Plaintiffs' factual allegations are insufficient to establish any of these bases for liability.

    a. <u>Official Policy or Custom</u>

As other judges in this District have held with respect to similar *Monell* allegations in the related cases, Plaintiffs' second amended complaint plausibly alleges that specific SLMPD policies or customs were the moving force behind the constitutional violations they suffered. *See Aldridge*, 2019 WL 1695982, at *9; *Laney*, 2019 WL 2423308, at *5.

Specifically, Plaintiffs allege a pattern of using chemical agents without warning against peaceful protestors complaining of police actions, including incidents in October and November 2014, in May and August 2015, and in July 2017; as well as additional incidents that occurred after the *Stockley* verdict on September 15, 2017, and thereafter. Plaintiffs also allege that the City entered into a settlement agreement in March 2015 in *Templeton, et al. v. Dotson, et al.*, No. 4:14-CV-2019 CEJ (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used and without ensuring that there is a means of safe egress from the area (among other protections), but that thereafter SLMPD officers continued to use chemical agents against non-violent protestors without adequate warning or opportunity to comply. These factual allegations are sufficient to support the existence of an

11

unconstitutional policy or custom that plausibly caused the constitutional violations here. The City's motion to dismiss Plaintiffs' *Monell* claims based on an unconstitutional policy or custom will therefore be denied.

      b. <u>Failure to Train or Supervise</u>

However, the Court agrees with the City that Plaintiffs' conclusory allegations with respect to their failure-to-train-or-supervise claim fail to survive a motion to dismiss. To state a viable § 1983 claim against the City for failure to train or supervise, Plaintiffs must plead facts sufficient to show that: 1) the City's police officer training and supervision practices were inadequate; 2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise was a result of deliberate and conscious choices; and 3) the City's training and supervision deficiencies caused Plaintiffs' constitutional deprivation. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted).

Plaintiffs plead no factual allegations in support of this claim other than the conclusion that the "City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of kettling and use of force." ECF No. 32 ¶ 188. The undersigned agrees with the judges in the related cases, who have held that such an allegation, alone, is insufficient to state a claim. *See Aldridge*, 2019 WL 1695982, at *11; *Laney*, 2019 WL 2423308, at *6. The Court will grant the City's motion to dismiss Plaintiffs' *Monell* claim to the extent it is based on the City's alleged failure to supervise, train, and discipline SLMPD police officers.

IV. State Law Claims

    a. Sovereign Immunity

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. 2016). Missouri law provides statutory exceptions to sovereign immunity, including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased. Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

As to each state-law claim, Plaintiffs have pleaded that the City obtains insurance through the Public Facilities Protection Corporation ("PFPC"), a not for profit corporation into which the City pays funds yearly; that the funds are later disbursed by the corporation to pay claims against the City; and that, alternatively, the City's relationship with the PFPC serves as a self-insurance plan because, as described in the 2017 Comprehensive Annual Financial Report for the City of St. Louis, "its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters." *E.g.*, ECF No. 32 ¶¶ 197-99.

13

The undersigned agrees with the other judges in this District who have held that the same or similar allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that Plaintiffs' state-law tort claims fall within an exception to sovereign immunity under § 537.610.1. *See, e.g.*, *Aldridge*, 2019 WL 1695982, at *13; *Laney*, 2019 WL 2423308, at *7; *see also Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). The Court will deny the City's motion to dismiss the state-law tort claims on the basis of sovereign immunity.

  b. <u>Official Immunity</u>

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citation omitted).

But "official immunity does not apply to discretionary acts done in bad faith or with malice." *Id.* "Acting with malice requires an actual intent to cause injury." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.*

At this early stage, Plaintiffs' allegations state facts from which it could be reasonably inferred that the Supervisors acted in bad faith or with malice by participating

14

in the kettling, use of pepper spray without warning, and arrests of Plaintiffs, who were not engaged in any unlawful activity, while officers chanted and taunted Plaintiffs and others. *See Aldridge*, 2019 WL 1695982, at *14; *Laney*, 2019 WL 2423308, at *8. The Court will deny the Supervisors' motion to the extent it is based on official immunity.

### c. Allegedly Duplicative Claims

The City and Supervisors' bare-bones contention that Plaintiffs cannot state a claim for infliction of emotional distress merely because they have also pleaded an assault claim is without merit. Under Missouri law, the torts of intentional and negligent infliction of emotional distress are "intended to supplement existing forms of recovery," provided that the elements of such claims are adequately pled. *See Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. Ct. App. 1998), *abrogated on other grounds by Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016). The motion to dismiss does not dispute that Plaintiffs adequately pled facts in support of the elements of these claims.

Likewise, "assault and battery are two distinct causes of action." *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. 2011). Although Plaintiffs may not recover duplicative damages, the Federal Rules of Civil Procedure permit them to plead alternative legal theories. *See* Fed. R. Civ. P. 8(d). The City and Supervisors' motion to dismiss these claims for failure to state a claim will be denied.

### d. Punitive Damages

Plaintiffs concede that they cannot recover punitive damages against the City on their state-law claims. *See* Mo. Rev. Stat. § 537.610.3; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Because Plaintiffs' claims against the Supervisors in

their official capacities are equivalent to claims against the City, Plaintiffs are likewise barred from recovering punitive damages from the Supervisors in their official capacities. Accordingly, the Court will strike Plaintiffs' requests for punitive damages on their state-law claims against the City and against the Supervisors in their official capacities only.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and Alternative Motion to Strike is **GRANTED in part and DENIED in part**. ECF No. 34. The motion is **GRANTED** only as to the failure-to-train claim in Count IV (the remainder of Count IV survives dismissal) and the request for punitive damages on the state-law claims against the City of St. Louis and against Gerald Leyshock, Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno in their official capacities. The motion is otherwise **DENIED**.

The Court will set a Rule 16 conference by separate Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2019.