UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LINDSEY LAIRD and ANDRE ROBERTS, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01567-AGF |
| | ) | |
| CITY OF SAINT LOUIS, MISSOURI, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Lindsey Laird and Andre Roberts claim that during peaceful protest activity following the September 15, 2017, verdict in *State of Missouri v. Stockley*,[1] St. Louis Metropolitan Police Department (SLMPD) officers unlawfully "kettled,"[2] pepper sprayed, assaulted, and arrested them.  Plaintiffs brought this action under 42 U.S.C. § 1983 against several SLMPD officers alleged to be involved in the relevant events, as well as the City of St. Louis.  Plaintiffs conducted extensive discovery to identify unnamed Doe defendants, culminating in Plaintiffs' Third Amended Complaint.  This is one of several cases arising out of SLMPD officers' conduct during the *Stockley* protests.

---

[1]     In *Stockley*, the Circuit Court of the City of St. Louis acquitted police officer Jason Stockley of charges arising from the death of Anthony Lamar Smith.  *State v. Stockley*, No. 16220CR02213-01 (Mo. 22nd. Jud. Cir. Sep. 15, 2017).

[2]     According to the complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress.

The matter is now before the Court on the motion (ECF No. 122) of all of the Defendants except the City[3] to dismiss Plaintiffs' Third Amended Complaint.  For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## BACKGROUND

Taken as true for the purpose of this motion, the facts alleged in the Third Amended Complaint are as follows.  Following the announcement of the *Stockley* verdict on September 15, 2017, public protests began at multiple locations around the City and continued for several days.  Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals."  Third Am. Compl., ECF No. 118 at ¶¶ 26, 28.

On September 17, 2017, Plaintiffs went to downtown St. Louis to check on friends who had been protesting peacefully throughout that weekend.  Shortly after the couple's arrival, police began to block streets and began herding people toward the intersection of Washington Avenue and Tucker Boulevard.  Plaintiffs were never told by police to disperse.  But officers wielding bicycles blocked the route that Plaintiffs hoped to use to exit.  Plaintiffs approached the officers to explain that they had only been present for a short time, had committed no crimes, and would leave voluntarily.  The officers yelled, "Get the [expletive] back!," and Plaintiffs raised their hands and backed away.  *Id.* at ¶ 145.  Despite Roberts's compliance and without warning, Defendant Matthew Karnowski

---

[3]     Each of the individual Defendants is sued in his or her individual capacity.  The City has answered the complaint and has not joined the motion to dismiss.

2

sprayed Roberts with pepper spray in the face and torso, using a large cannister of pepper spray known as a fogger.  Both Plaintiffs then immediately sat on the ground with their hands in the air.  Defendants Brandt Flowers and Brett Carlson zip-cuffed Laird, and Defendants Samuel Rachas, Keith Burton, and Jason Brandhorst zip-cuffed Roberts.

After being pepper sprayed, Roberts was shaking, breathing erratically, drooling, and temporarily passed out.  When Laird attempted to assist Roberts, Defendant Daniel Cora dragged her away and an unidentified SLMPD officer kicked Roberts while Roberts was restrained on the ground. Defendants Carlson, Brandhorst, and the unidentified SLMPD officer tightly zip-cuffed Laird again, leaving a large bruise on her arm.  A second unidentified officer restrained Laird and led her from the intersection.[4]

Defendant Gregory Schaffer led Roberts from the intersection and, despite Roberts's full compliance, Schaffer threw Roberts against a wall of 314 City Bar with enough force to injure Roberts's shoulder and break the zip ties from his wrists. Defendant Glennon Frigerio then held Roberts by his throat, choking Roberts with enough force to lift Roberts's feet from the ground.  Simultaneously, Defendant Schaffer applied new zip cuffs to Roberts's wrists.[5]  Roberts sat against the wall for 30 to 60 minutes before police placed Roberts in a police wagon and Laird in a bus.

During the arrests, unidentified "SLMPD officers" seized Laird's pocketknife and Roberts's "Ray-Ban frames and prescription lenses, his medical kit, his Swiss Army

---

[4]     The City has identified Defendant Jeremiah Koerper as Laird's arresting officer.

[5]     The City has identified Defendant Schaffer as Roberts's arresting officer.

multitool, and his MTech knife," and did not return these items to Plaintiffs.  ECF No. 118 at ¶¶ 319-320.

Plaintiffs remained detained for approximately 20 hours in crowded cells[6] and were never provided with clean water or medical attention.  Police never read Laird her rights.  Both Plaintiffs were released from jail on September 18, 2017, Roberts at around 5:30 p.m. that day and Laird at around 6:00 p.m.  Plaintiffs allege that "[u]pon their release, all of the arrestees were given summonses showing that they had been charged with 'failure to disperse' [and] were instructed to appear at St. Louis City Municipal Court on October 18, 2017." *Id.* ¶ 117.  However, on October 13, 2017, the City Counselor's office issued a letter to arrestees stating that it was "still reviewing the evidence" to decide whether to file charges and that the arrestees were "released from any obligation to appear in Municipal Court on October 18, 2017." *Id.* ¶ 125.  There is no indication in the complaint that Plaintiffs were ever formally charged.

Plaintiffs claim that they were not engaged in unlawful activity at any time during their encounter with police.  During and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" *Id.* ¶ 104.  Officers also taunted arrestees, saying, that if they wanted to be comfortable or wanted water, they "shouldn't have committed a crime." *Id.* ¶ 166.

---

[6]     At least 45 men were in Roberts's cell, over the cell's listed capacity of 31 persons.  The cell was so full that Roberts could not sit, forcing him to stand for 20 hours.

4

With respect to the unidentified officers, Plaintiffs allege that they have been unable to identify these officers because officers removed their name tags from their uniforms and wore masks to conceal their faces.  Plaintiffs further allege that, in violation of its policies, the City and SLMPD failed to properly document the arrests and the various uses of force against Plaintiffs and other persons arrested that evening.  Plaintiffs allege that, but for the actions of the individual officers, the SLMPD, and the City, these officers could have been identified.

Plaintiffs' Third Amended Complaint names the City and several SLMPD officers, and asserts the following claims:

Count 1: Unreasonable seizure under the Fourth and Fourteenth Amendments against the "Defendant Officers"[7];

Count 2: Violations of free speech, press, association, and assembly under the First and Fourteenth Amendments against the Defendant Officers;

Count 3: Conspiracy to deprive civil rights against the Defendant Officers and Defendant Lt. Col. Lawrence O'Toole[8];

---

[7]    The Third Amended Complaint defines "Defendant Officers" as the individuals listed in paragraphs 12 through 21 of the complaint: Gerald Leyshock, Timothy Sachs, Daniel Howard, Randy Jemerson, Brian Rossomanno, Jason Brandhorst, Jeremiah Koerper, Brandt Flowers, Brett Carlson, Daniel Cora, Matthew Karnowski, Gregory Schaffer, Samuel Rachas, Keith Burton, Glennon Frigerio, a list of more than 50 named Lieutenants and Sergeants who are described collectively as "Supervisor Officers"; and other unidentified SLMPD officers who participated in the conduct but could not be identified for the reasons stated above.  ECF No. 118 at p. 2 n.1; ¶¶ 12-21.

[8]    O'Toole was the acting Chief of Police on the date in question.

Count 4: Failure to train, discipline, and supervise, and a custom of unconstitutional seizures and using excessive force against the City;

Count 5: Assault in violation of Missouri law against the Defendant Officers;

Count 6: False arrest in violation of Missouri law against the Defendant Officers;

Count 7: Abuse of process in violation of Missouri law against the Defendant Officers and O'Toole;

Count 8: Malicious prosecution in violation of Missouri law against the Defendant Officers and O'Toole;

Count 9: Intentional infliction of emotional distress in violation of Missouri law against the Defendant Officers;

Count 10: Negligent infliction of emotional distress in violation of Missouri law against the Defendant Officers;

Count 11: Vicarious liability under the City Charter against O'Toole and Charlene Deeken, Director of Public Safety for the City;

Count 12: Excessive force under the Fourth and Fourteenth Amendments against the Defendant Officers;

Count 13: Failure to intervene in the use of excessive force against the Defendant Officers and O'Toole;

Count 14: Battery in violation of Missouri law against the Defendant Officers; and

Count 15: Conversion in violation of Missouri law against the Defendant Officers.

All Defendants except the City seek to dismiss the Third Amended Complaint for failure to state a claim upon which relief can be granted.  They also assert qualified immunity under federal law and official immunity under state law.

## DISCUSSION

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party.  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level."  *Hoag*, 868 F.3d at 671 (citation omitted).

**Exhibits Attached to Earlier Complaints**

Unlike their prior complaints, Plaintiffs did not attach any exhibit to the Third Amended Complaint.  Defendants assert the Court should still consider, for the purposes of this motion, certain exhibits attached to the prior complaints, by finding them necessarily embraced by the complaint, or by taking judicial notice of them.  The exhibits referenced by Defendants are the transcript from the preliminary injunction hearing in another case arising out of police handling of the *Stockley* protests,  *Ahmad v. St.*

*Louis*, No. 4:17 CV 2455 (E.D. Mo.), a declaration of Rossomanno filed in *Ahmad*, and a video of the events in question.

As several other judges in this District have held with respect to the same argument raised in the related cases, the Court cannot consider the exhibits attached to the earlier complaints. *See, e.g.*, *Ortega v. City of St. Louis*, No. 4:18 CV 1576 DDN, 2021 WL 3286703, at \*8-9 (E.D. Mo. Aug. 2, 2021). "When a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect." *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[W]hen [plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity.").

Nor will the Court take judicial notice of the content of the exhibits. Federal Rule of Evidence 201(b) allows a court to take judicial notice of "a fact that is not subject to reasonable dispute" either because it is generally known within the court's jurisdiction or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The facts that Defendants ask the Court to take judicial notice of, such as that the "crowd had disregarded repeated orders to disperse" (ECF No. 123 at 6) are disputed by Plaintiffs. *See Ortega*, 2021 WL 3286703, at \*9 (holding the same).

## Individual Defendants Against Whom No Specific Allegations are Made

As Defendants concede, Plaintiffs allege specific misconduct by Defendants O'Toole, Leyshock, Sachs, Howard, Boyher, Jemerson, and Rossomanno in their

supervisory roles. ECF 118 at ¶¶ 50, 56, 101, 111, 200, 296. Plaintiffs also allege specific

misconduct involving direct contact between Plaintiffs and Defendants Karnowski,

Koerper, Flowers, Schaffer, Carlson, Rachas, Burton, Brandhorst, Frigerio, and Cora. *Id.*

at ¶¶ 20, 146, 152-164.

But as to the other named Defendants, whom Plaintiffs refer to collectively as

"Supervisor Officers," Plaintiffs merely allege that they were "employed as senior

officers with the SLMPD during the events of September 17, 2017," and that

"[a]ccording to the City's own documents, Supervisor Officers supervised SLMPD

Officers during the events in question, directed the police officers in their command to

arrest the persons at the intersection of Washington and Tucker, and knew or should have

known that there was no probable cause for the arrests of Plaintiffs and that there was no

legal justification to use force against Plaintiffs."  ECF No. 118 at ¶ 17.

"To prevail on a § 1983 claim, a plaintiff must show each individual defendant's

personal involvement in the alleged violation." *Burbridge v. City of St. Louis, Missouri*,

2 F.4th 774, 782 (8th Cir. 2021) (citations omitted).  Faced with a similar argument in

related case, *Street v. O'Toole*, No. 4:19 CV 2590 CDP, 2021 WL 677909 (E.D. Mo. Feb.

22, 2021), Judge Catherine D. Perry held:

> Defendants cannot be held liable merely because they were employed by the
> SLMPD on the night some members of that department may have violated
> plaintiffs' rights—liability under § 1983 requires proof of a causal link
> between *each* defendant and the *specific wrongs* that defendant committed.
> Put differently, asserting broad, sweeping allegations that a group of
> defendants committed constitutional misconduct is not sufficient to satisfy
> plaintiffs' pleading obligations as to each defendant within that
> group.  Absent specific and plausible factual allegations, plaintiffs' claims
> are merely legal conclusions couched as factual allegations.  Moreover,

plaintiffs' vague allegations fail to provide each defendant with fair notice of
what the claim is and the grounds upon which it rests.

2021 WL 677909, at *4–5 (emphasis in original) (internal citations omitted)  *Cf.*

*Burbridge*, 2 F.4th at 781 (affirming the district court's finding that it was not fatal to the

plaintiff's case that the plaintiff could not identify which individual officers "landed the

blows," where there was no dispute each of the officers participated in the arrest and use

of force).  The undersigned agrees with Judge Perry's analysis and will dismiss without

prejudice the individual defendants against whom no specific allegations are made.

**Qualified Immunity**

"Qualified immunity shields a government official from suit under § 1983 if his

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir.

2019) (citation omitted).  Officials are entitled to qualified immunity  "unless (1) the

evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a

constitutional or statutory right, and (2) the right was clearly established at the time of the

violation, such that a reasonable officer would have known that his actions were

unlawful." *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012).  Qualified

immunity serves to protect "all but the plainly incompetent or those who knowingly

violate the law." *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017).

I.     Unlawful Seizure (Counts 1 and 2)

Plaintiffs allege that their kettling and arrests were unlawful seizures in violation

of their Fourth, First, and Fourteenth Amendment rights.  The remaining Defendant

Officers[9] argue they had probable cause to arrest Plaintiffs and, as such, did not violate Plaintiffs' constitutional rights and are entitled to qualified immunity.

"A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (citations omitted).  "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense. There is arguable probable cause even where an officer mistakenly arrests a suspect believing it to be based in probable cause if the mistake is objectively reasonable." *Id.* (citations omitted) However, an arrest made without probable cause and in response to protected speech does not warrant qualified immunity, as "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

The Remaining Defendant Officers base their argument for probable cause primarily on *Bernini v. City of St. Paul*, which considered Fourth Amendment challenges to mass arrests and affirmed that probable cause "is satisfied if the officers have grounds to believe all arrested persons were a part of the *unit* observed violating the law." *Bernini*, 665 F.3d at 1003 (emphasis in original) (citation omitted).  However, this Court

---

[9]     These are Defendants Leyshock, Sachs, Howard, Boyher, Jemerson, Rossomanno, Karnowski, Koerper, Flowers, Schaffer, Carlson, Rachas, Burton, Brandhorst, Frigerio, and Cora (hereinafter, the "Remaining Defendant Officers").

is persuaded by Chief Judge Rodney W. Sippel's analysis in *Baude v. City of St. Louis*, 476 F. Supp. 3d 900, 910 (E.D. Mo. 2020), another case arising out of police response to *Stockley* protest activity at the intersection of Washington and Tucker, distinguishing *Bernini* and concluding that the officers here did not have reasonable grounds to believe that the individual arrestees were part of a unit observed violating the law.

As Judge Sippel noted, unlike in *Bernini*, the crowd here was not chanting or marching in unison. *Baude*, 476 F. Supp. 3d at 910. Nor did the crowd arrive to the area at the same time. Rather, Plaintiffs allege that they and others entered the intersection hours after the initial dispersal orders were given. By the time that officers arrested everyone present at the intersection, the crowd included those who, like Plaintiffs, had no reason to suspect that the gathering could be unlawful.

As was observed in *Baude*, 476 F. Supp. 3d at 910, a key factor in the court's analysis in *Bernini* was the officers' attempt to sort out who had been part of a unit acting unlawfully and who had been swept into the crowd later on. *See Bernini*, 665 F.3d at 1004. Taking Plaintiffs' allegations as true, no such attempt was made by the Remaining Defendant Officers; nor did the circumstances justify such a failure. The crowd at the intersection, which included neighborhood residents, onlookers, and journalists, was relatively calm. At the time of the arrest, officers were not facing any credible threat of force to themselves or to property, and the only reports of violence or property damage occurred much earlier in the day in a different part of the city. Though some protestors continued to voice criticisms of the police, at no point did these critiques rise to the level of threats of violence. In these circumstances, a mass arrest of all present, without trying

12

to determine who was disobeying the dispersal orders and who was unaware that they were issued, undermines any claim of arguable probable cause.

Furthermore, the Remaining Defendant Officers have failed to establish that the crowd was acting unlawfully. The impeding traffic, unlawful assembly, and peace disturbance statutes on which these Defendants rely all require a certain level of knowledge and willful or purposeful conduct that is plainly contradicted by Plaintiffs' allegations. *See* Mo. Rev. Stat. §§ 574.010(2), 574.040, 574.060. Taking Plaintiffs' allegations as true, the Remaining Defendant Officers lacked even arguable probable cause to believe the statutes cited had been violated. These Defendants are thus not entitled to qualified immunity.

Next, the Remaining Defendant Officers invoke *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595 (E.D. Mo. 2019) in support of their argument for qualified immunity. *Burbridge* arose out of the same incident and, on summary judgment, the court held that the defendants were entitled to qualified immunity regarding the claim of unlawful arrest. However, the decision in *Burbridge* benefitted from further factual findings that have yet to develop in this case, including undisputed evidence demonstrating that individuals threw objects at officers and officers gave dispersal orders through a public address system. 430 F. Supp. 3d at 610-11. Based on that evidence and the record as a whole at the summary judgment stage, the defendants in *Burbridge* were able to show that the group was acting in concert and that their concerted action was in violation of city ordinances. The Remaining Defendant Officers here have not made such a showing on the pleadings alone.

13

Finally, the Remaining Defendant Officers argue that Plaintiffs' allegations are insufficient to establish Defendants' Boyher, Jemerson, Karnowski, and Rossomanno's supervisory liability for the unlawful arrests, and that the other officers cannot be held liable because they relied on the directives of their superiors.[10]   The same arguments were raised in the related cases arising from the mass arrests at Washington and Tucker, and the judges in this District have uniformly rejected them. *See, e.g.*, *Ortega*, 2021 WL 3286703, at *12; *Davis v. City of St. Louis*, No. 4:18CV1574 HEA, 2021 WL 4148331, at *8 (E.D. Mo. Sept. 13, 2021).

The undersigned will do the same.  Plaintiffs' Third Amended Complaint specifically alleges that Rossomanno and Jemerson directed individuals towards Washington and Tucker; Karnowski pepper sprayed Roberts under the observation and direction of Jemerson and Rossomanno; and Boyher and Karnowski, along with Howard and Leyshock, put Sachs's mass arrest plan into action. *See, e.g.*, ECF No. 118 ¶¶ 50, 101, 137, 145.  These are sufficient, specific allegations to establish that these Defendants participated in Plaintiffs' allegedly unlawful arrest.[11]

---

[10]    The Remaining Defendant Officers assert that "Plaintiffs themselves ascribe the plan to execute a mass arrest to defendants Leyshock, Sachs and Howard."  ECF No. 123 at 8.

[11]    O'Toole is not named in Counts 1 or 2 (unlawful arrest) or Count 12 (excessive force), as he is not among the officers defined as "Defendant Officers." ECF No. 118 at pp. 2 n.1, 36-37, 53.  However, he is named in Count 13, for Failure to Intervene in Use of Excessive Force. *Id.* at p. 55.  As part of that count, Plaintiffs specifically plead that O'Toole was in the "Real Time Crime Center" during all of the events in question, was communicating with officers on the ground, was monitoring and had approved the kettling and mass arrest, witnessed the force deployed on Plaintiffs and the other arrestees, and failed to intervene.  ECF No. 118 at ¶¶ 296-298.  These allegations are

Neither can the Remaining Defendant Officers escape liability by claiming that they acted on the orders of their superiors.  The Eighth Circuit has held that an officer may rely on an assurance of probable cause from another officer so long as that reliance is objectively reasonable.  *See Bell v. Neukirch*, 979 F.3d 594, 609 (8th Cir. 2020); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1010 (8th Cir. 2017).  Based on Plaintiffs' allegations, it would have been unreasonable for these officers to rely on the assurance of their superiors that the crowd was not dispersing.  There is no legal support for the proposition that "a government official is immune if a superior instructs him to engage in unconstitutional conduct."  *Quraishi v. St. Charles Cty.*, 986 F.3d 831, 837 (8th Cir. 2021).  The Court will thus deny the motion to dismiss Counts 1 and 2 as to the Remaining Defendant Officers.

II.     Excessive Force (Count 12)

Plaintiffs allege that Defendant Officers used excessive force against them when they kettled them without warning, pepper sprayed Roberts, painfully zip cuffed both Plaintiffs, dragged Laird across the pavement, kicked Roberts while he was restrained on the ground, threw Roberts against a wall, and choked Roberts, all while both Plaintiffs were compliant and not resisting.  The Remaining Defendant Officers argue that they are

---

specific enough to plausibly hold O'Toole liable for failure to intervene.  *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015) ("[A]n officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment . . . [provided that] the officer observed or had reason to know that excessive force would be or was being used.") (internal citations omitted).

qualifiedly immune from liability because: (1) Plaintiffs do not sufficiently allege that supervisory officers Leyshock, Howard, Sachs, Boyher, Jemerson, and Rossomanno, knew that other officers were using excessive force; (2) if they did know, it was reasonable for them to believe that the use of force was necessary; and (3) it was "not clearly established at the time that the use of pepper spray, tight handcuffing, arm twisting, or brief dragging of an arrestee constitute anything more than de minimis use of force." ECF No. 123 at 9.

Again, the undersigned is persuaded by the reasoning of other judges in this District faced with nearly identical arguments to deny qualified immunity on Plaintiffs' excessive force claim except to the extent the claim relies on the kettling or tight zip-cuffing of Plaintiffs. *See, e.g.*, *Ortega*, 2021 WL 3286703, at *13-14; *Davis*, 2021 WL 4148331, at *9; *see also Street*, 2021 WL 677909, at *6; *Baude*, 476 F. Supp. 3d at 914.

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (internal citations omitted). In applying this reasonableness standard, the Court must evaluate the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," as "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) (internal citations omitted).

"[T]he unreasonableness of the force used, not the nature of the injury is the relevant inquiry." *Baude*, 476 F. Supp. 3d at 914 (citing *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)).  However, "[a] de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minimis use of force." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) (citation omitted).  Factors the courts have considered in analyzing the reasonableness of force include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the plaintiff] is actively resisting arrest or attempting to evade arrest by flight."  *Peterson*, 754 F.3d at 600.

At the time of the events in question, it was "clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499.  It was also clearly established that it is unreasonable to use pepper spray on a non-resisting, non-fleeing individual suspected of a non-violent misdemeanor. *Tatum v. Robinson*, 858 F.3d 544, 548-550 (8th Cir. 2017); *see also Johnson v. Carroll*, 658 F.3d 819, 827-28 (8th Cir. 2011) (holding that defendants' actions in pepper spraying and throwing a non-violent, non-threatening suspected misdemeanant to the ground were unlawful).  Finally, it was clearly established that "the use of . . . gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment."  *Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009); *Blazek v. City of Iowa, City*, 761 F.3d 920, 925 (8th Cir. 2014) (holding that it was clearly

17

established that jerking a non-resisting and handcuffed detainee up by the arms with sufficient force to injure his shoulder was "[a] gratuitous and completely unnecessary act of violence [that] violates the Fourth Amendment") (internal citation omitted).

In light of this precedent, the Remaining Defendant Officers that are alleged to have deployed pepper spray against Roberts, thrown Roberts against the wall, kicked and choked Roberts while he was handcuffed, and dragged Laird across the pavement—all while these Plaintiffs were purportedly being detained for non-violent misdemeanors and neither was fleeing, posing a threat to anyone, or resisting arrest in any way—was not objectively reasonable. *See Ortega*, 2021 WL 3286703, at *13-14; *Davis*, 2021 WL 4148331, at *9; *see also Street*, 2021 WL 677909, at *6; *Baude*, 476 F. Supp. 3d at 914.

As indicated above, Plaintiffs also plausibly allege that supervisory officers Leyshock, Howard, Sachs, Boyher, Jemerson, and Rossomanno were present at the mass arrest and either ordered these uses of excessive force or witnessed officers using excessive force and failed to intervene.  At this stage of the litigation, such allegations are sufficient to hold these supervisory officers liable and deny qualified immunity.  *See Baude*, 476 F. Supp. 3d at 913-13; *Street*, 2021 WL 677909, at *5-6; *Ortega*, 2021 WL 3286703, at *14; *Davis*, 2021 WL 4148331, at *9.

However, the undersigned agrees with Judges David D. Noce and Henry E. Autrey in *Ortega* and *Davis*, respectively, that it was not clearly established at the time that kettling detainees, which does not itself involve the use of force, or applying zip cuffs too tightly rises to the level of excessive force. *See Ortega*, 2021 WL 3286703, at *14; *Davis*, 2021 WL 4148331, at *9; *see also Chambers v. Pennycook*, 641 F.3d 898, 907

18

(8th Cir. 2011) ("Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied.") (internal citations omitted).  Therefore, the Remaining Defendant Officers are entitled to qualified immunity on these portions of Plaintiffs' excessive force claim.

III.   Civil Conspiracy Claim (Count 3)

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff."  *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted).

The Remaining Defendant Officers and O'Toole assert that they are entitled to qualified immunity on Plaintiffs' conspiracy claim because the law surrounding the application of the intracorporate conspiracy doctrine to § 1983 claims is not clearly established.  The intracorporate conspiracy doctrine provides that  "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "The doctrine stems from basic agency principles that attribute the acts of a corporation's employees to the corporation itself, so that all their acts are treated as the acts of a single legal entity."  *Burbridge*, 2 F.4th at 783 n.6.

Though debate surrounds whether the intracorporate conspiracy doctrine should apply in civil rights cases where the acts of a municipal employee are not attributable to the municipality itself, the Eighth Circuit has already extended the intracorporate

19

conspiracy doctrine to § 1985 claims. *Powers v. City of Ferguson*, 229 F.Supp.3d 894,

905 (E.D. Mo. 2017) (citing *L.L. Nelson Enters. v. City of St. Louis*, 673 F.3d 799, 812

(8th Cir. 2012)). The Eighth Circuit has not decided whether to extend the doctrine to §

1983 conspiracy claims, but other circuits have applied the doctrine to § 1983 conspiracy

claims. *See Jackson v. City of Cleveland*, 925 F.3d 793, 819-20 (6th Cir. 2019), *Grider v.

City of Auburn*, 618 F.3d 1240, 1261-62 (11th Cir. 2010). The question of whether the

doctrine should apply to § 1983 claims has arisen several times in this District, but judges

have declined to address its validity in the absence of clear direction from the Eighth

Circuit. *E.g.*, *Aldridge v. City of St. Louis*, No. 4:18-CV-1677-CAS, 2019 WL 1695982

at *8 (E.D. Mo. Apr. 17, 2019).

   With this legal backdrop in mind, the undersigned is persuaded by Chief Judge

Sippel's opinion in *Baude* that the Remaining Defendant Officers and O'Toole are

entitled to qualified immunity on Count 3 because the law regarding the application of

the intracorporate conspiracy doctrine in § 1983 cases was not clearly established. *See

Baude*, 476 F. Supp. 3d at 916 (granting qualified immunity on the § 1983 civil

conspiracy claim); *but see Street*, 2021 WL 677909, at *8 (disagreeing with *Baude* and

holding that "a reasonable SLMPD officer would have known that he or she could be

subjected to § 1983 conspiracy liability by conspiring with other SLMPD officers to

violate plaintiffs' clearly established constitutional rights"); *Ortega*, 2021 WL 3286703,

at *15 (same); *Davis*, 2021 WL 4148331, at *10 (same).[12]

---

[12]    The Eighth Circuit cases relied upon by *Street* as recognizing a § 1983 conspiracy
claim against police officers did not address the potential application of the intracorporate

In *Ziglar*, the Supreme Court held that the fact that courts were divided as to whether the intracorporate-conspiracy doctrine should apply to conspiracy claims under § 1985 "demonstrates that the law on the point is not well established." 137 S. Ct. at 1868. *Ziglar* was decided on June 19, 2017, just before the events at issue in the instant case. The Supreme Court explained "[w]hen the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability." *Id.* The undersigned cannot discern a meaningful distinction between the nature of the uncertainty surrounding the doctrine's applicability to § 1985 conspiracies and its applicability to § 1983 conspiracies. The law is unsettled in both contexts, and as such, the Court is bound by *Ziglar* to hold that qualified immunity applies. The Court will thus grant the motion to dismiss Count 3.

**State-Law Claims**

Plaintiffs bring tort claims of assault, battery, false arrest, abuse of process, malicious prosecution, intentional and negligent infliction of emotional distress, and conversion. The Remaining Defendant Officers argue that the state-law claims are barred by official immunity for the same reasons advanced in support of qualified immunity. They further argue that the claims of abuse of process, malicious prosecution, and conversion are insufficient as a matter of state law, and that the claims of emotional distress are duplicative of the claims of assault and battery. Finally, they argue that the

---

conspiracy doctrine. *See, e.g.*, *Small v. McCrystal*, 708 F.3d 997, 1010 (8th Cir. 2013); *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 853 (8th Cir. 2013).

Court should decline to exercise supplemental jurisdiction over Plaintiffs' "Vicarious Liability Under City Charter" claim against Defendants O'Toole and Deeken (Count 11).

I.    Official Immunity

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions . . . ." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citing *Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006)). The same is true for the investigation of a crime and arrest. *See Reasonover,* 447 F.3d at 585.

But official immunity "does not apply to those discretionary acts done in bad faith or with malice." *Id.* "Acting with malice requires an actual intent to cause injury." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (citation omitted). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.* (citations omitted).

Plaintiffs' allegations are sufficient to demonstrate that the Remaining Defendant Officers acted with malice in carrying out the mass arrests and use of force here. The undersigned agrees with the other judges in this District that have found that "the inflammatory and disparaging remarks made by SLMPD officers before, during, and after the incident, and the comparison between SLMPD's response to the Stockley protests and other protests  not related to police misconduct may reasonably support a

finding of malice or bad faith." *Ortega*, 2021 WL 3286703, at *17 (citing *Street*, 2021 WL 677909 at *10). The Remaining Defendant Officers are thus not entitled to official immunity.

II.    Abuse of Process, Malicious Prosecution, and Conversion (Counts 7, 8 & 15)

The undersigned, like the other judges in this District that have considered the issue, reaches a different conclusion with respect to Plaintiffs' abuse of process, malicious prosecution, and conversion claims.[13]

Under Missouri law, the torts of abuse of process and malicious prosecution both require the initiation of legal proceedings against the plaintiff by the defendant. *See Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277 (Mo. 2019) (elements of abuse of process); *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. 1994) (elements of malicious prosecution).

Plaintiffs do not allege facts to demonstrate that any of the Remaining Defendant Officers or O'Toole[14] initiated or participated in initiating legal proceedings against either Plaintiff. Plaintiffs do not allege that they were ever formally charged with a crime or that any of the Remaining Defendant Officers or O'Toole actually participated in

---

[13]    To the extent that the Remaining Defendant Officers argue that Plaintiffs have failed to adequately allege their claims for battery (Count 14), assault (Count 5), and false arrest (Count 6), the Court rejects their argument. These claims, like their federal counterparts under § 1983 (unlawful arrest and excessive force) are adequately pled, for the reasons discussed above. *See Street,* 2021 WL 677909, at *10; *Ortega*, 2021 WL 3286703, at *17; *Davis*, 2021 WL 4148331, at *10.

[14]    O'Toole is named in both the abuse-of-process and malicious prosecution claims based on his role as the acting Chief of Police.

23

issuing the summons.  Plaintiffs' allegations against these Defendants are limited to their

conduct in effecting the arrests.  As other judges in this District have held, such

allegations are insufficient to state a claim for abuse of process or malicious prosecution.

*See Street*, 2021 WL 677909 at *10 (dismissing abuse-of-process and malicious

prosecution claims where, "[a]lthough plaintiffs allege that every defendant 'assisted in

the filing of charges against plaintiffs,' the factual allegations do not show that

defendants' interactions with plaintiffs went beyond their arrests."); *Ortega*, 2021 WL

3286703, at *18 (same); *Davis*, 2021 WL 4148331, at *10 (same).  Therefore, the Court

will dismiss Counts 7 and 8.

Plaintiffs likewise fail to state a claim for conversion because Plaintiffs do not

identify which Defendant took their property, instead asserting that "SLMPD officers" in

general seized their items.  *E.g.*, ECF No. 118 at ¶¶ 319-20.  These allegations are

insufficient to support a claim against any of the Remaining Defendant Officers.

Therefore, the Court will dismiss Count 15.  *See Street*, 2021 WL 677909, at *11

(dismissing conversion claims where the plaintiffs asserted that property was taken by

officers but did not identify which officers participated in the conversion).

III.    <u>Intentional and Negligent Infliction of Emotional Distress (Counts 9 and 10)</u>

The undersigned also agrees with the other judges in this District that have held

that the intentional infliction of emotional distress claim may proceed at this stage under

Federal Rule of Civil Procedure 8(d)(3) as a claim pled in the alternative, *see Ortega*,

2021 WL 3286703, at *19; and that the claim for negligent infliction of emotional

24

distress is not duplicative of the assault or battery claims, *see Street*, 2021 WL 677909, at

*11.  Therefore, the Court will deny Defendants' motion to dismiss these claims.

IV.     Vicarious Liability Under City Charter (Count 11)

In Count 11, Plaintiffs allege that O'Toole and Deeken are vicariously liable under

the City's Charter because Article VIII, Section 5 of the Charter states that "[e]ach head

of a department, office or division ***shall*** be responsible for the acts or omissions of

officers and employees appointed by him, and may require bonds or other securities from

them to secure himself."  ECF No. 118 at ¶ 275 (emphasis in original).  Plaintiff alleges

that O'Toole and Deeken were officers and employees of the Chief of Police and were

acting in the scope of their employment when they committed the acts alleged.

As the other judges that have considered this issue have done, pursuant to 28

U.S.C. § 1367(c)(1), the undersigned will decline to exercise supplemental jurisdiction

over this claim because it raises "complex and unsettled questions of state law

preemption over obscure municipal ordinance."  *Street*,  2021 WL 677909, at *14;

*Ortega*, 2021 WL 3286703, at *19; *Davis*, 2021 WL 4148331, at *11.  Such novel issues

of state law should be addressed by the state courts in the first instance.

## CONCLUSION

For the reasons set out above, the officers against whom no specific allegations

were made will be dismissed from this action without prejudice.  Plaintiffs' civil

conspiracy claim (Count 3) and the portions of their excessive force claim (Count 12)

relating to kettling and zip-cuffing too tightly will be dismissed with prejudice on the

basis of qualified immunity.  Plaintiffs' state-law abuse-of-process, malicious

25

prosecution, and conversion claims (Counts 7, 8, and 15) will be dismissed with prejudice for failure to state a claim.  Finally, the Court will decline to exercise supplemental jurisdiction over Count 11, which is the only claim asserted against Defendant Deeken, and Count 11 and Defendant Deeken will also be dismissed without prejudice.

Accordingly

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 122) is **GRANTED in part and DENIED in part** as set forth herein:

i.     All defendants <u>except</u> for the City of St. Louis and individual defendants O'Toole, Leyshock, Sachs, Howard, Boyher, Jemerson, Rossomanno, Karnowski, Koerper, Flowers, Schaffer, Carlson, Rachas, Burton, Brandhorst, Frigerio, and Cora are **DISMISSED from this action without prejudice.**

ii.     Counts 3, 7, 8, and 15 are **DISMISSED in their entirety, with prejudice.**

iii.     Count 12 is **DISMISSED in part, with prejudice,** solely as it relates to Defendants' alleged acts of kettling and applying zip cuffs too tightly.

iv.     Supplemental jurisdiction under 28 U.S.C. § 1367 over Count 11 is denied and Count 11 is **DISMISSED without prejudice**.

In all other respects, the motion to dismiss is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2021.

26